# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GABRIEL SANCHEZ, | § § | |
| v. | § § | SA-18-CV-184-XR |
| CITY OF SAN ANTONIO | § § § | |

## ORDER

On this day came on to be considered Plaintiff's Motion to Exclude and Strike the Testimony of Dwight D. Steward (Dkt. No. 23) and Objections to and Motion to Exclude and Strike Testimony of Defendant's Expert Dr. Dwight D. Steward (Dkt. No. 27)[1].

Plaintiff was formerly employed with the City's public utility service, CPS Energy. He now brings suit alleging disability discrimination and a claim under the Family and Medical Leave Act.

CPS Energy engaged Dwight D. Steward, Ph.D., an economist and statistician, to perform an economic and labor market analysis. Plaintiff engaged Thomas Glass, Ph.D. and CPA, who opined that Plaintiff has suffered $1.6M in past and future lost wages and $1.325M in lost retirement benefits. Plaintiff also engaged R. Brad Coffey, a vocational counseling expert. Dr. Steward has opined that "Dr. Glass' analysis overstates any alleged economic losses in this case by overestimating the income that Mr. Sanchez could have reasonably been expected to earn from CPS even if Mr. Sanchez's employment had not been terminated. Dr. Glass' analysis further inflates the alleged economic damages in this case by underestimating Mr. Sanchez's current

---

[1] This filing makes the same arguments previously raised in the earlier motion.

earnings ability. Further, the post-CPS jobs that Dr. Glass uses in his analysis, which are based on the vocational report of Mr. Brad Coffey, are overly restrictive."

Plaintiff specifically objects to pages 10 through 15 of Dr. Steward's report. In sum, Plaintiff contends that Dr. Steward is not a vocational expert, unqualified to render expert opinions on Plaintiff's future employability, fails to explain his methodology, and his testimony would be unreliable, misleading and invites speculation.

Defendant responds that any objections to Dr. Steward's report and anticipated expert testimony concern the weight, not the admissibility. Defendant notes that Dr. Steward is a labor economist, scholar, and teacher on employment-related issues, economics, and statistics, and lectures on "labor market research methodologies and data used to analyze labor market issues, such as unemployment and re-employment, expected job unemployment duration, job skill transferability in the labor market, and the determination of an employee's wage rate in the labor market."[2] Importantly, Defendant notes that Dr. Steward "makes no assumptions whatsoever regarding Sanchez's physical ability to return to work. Instead, Dr. Steward, as is typical in employment discrimination cases, performs a labor market analysis in terms of Sanchez's failure to mitigate his damages in this lawsuit. Neither Dr. Steward's report nor his testimony renders any opinion as to Plaintiff's ability or capacity to physically return to work."

In *Dean v. Sea Supply, Inc.*, No. CV 16-14254, 2017 WL 3773149, at *1 (E.D. La. July 13, 2017), that Court encountered the argument here, in reverse. The defendants argued that the expert economist's opinion on Plaintiff's future earning capacity was based on two incorrect assumptions:

---

[2] Defendant also notes that Dr. Steward as a statistician reviews "occupational employment statistics, statistics regarding the job openings and labor turnover survey, the occupational outlook handbook, and the current population survey…."

(1) Plaintiff cannot return to work at all, or (2) the most he can earn in the future is full-time, minimum-wage work. The defendants argued that economic calculations not based on the findings of a vocational rehabilitation expert were "clearly erroneous" and failed to survive a *Daubert* challenge. The Court denied the *Daubert* challenge, stating, the "party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. The requirement of reliability does not strictly bind an expert within the proffered field of expertise; an expert may also testify concerning related applications of his or her background." *Id*. at *4. *See also Puga v. RCX Sols., Inc.*, No. 17-41282, 2019 WL 409698, at *4–5 (5th Cir. Feb. 1, 2019) ("When evaluating expert testimony, the overarching concern is generally whether the testimony is relevant and reliable. To be reliable, expert testimony must 'be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief.' To be relevant, the expert's 'reasoning or methodology [must] be properly applied to the facts in issue.' When performing this analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact…. As this court has noted, however, the 'helpfulness threshold is low: it is principally ... a matter of relevance.' As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."); *Sanchez v. Swift Transportation Co. of Arizona, LLC*, No. 4:15CV15-LG, 2017 WL 3333118, at *1 (W.D. Tex. June 29, 2017)(denying motion to strike expert where the economic expert testified that he was not proffering vocational opinions).

Here, Dr. Steward's opinions are clearly relevant. Nor can Plaintiff challenge the entirety of Dr. Steward's testimony. It is uncertain whether Plaintiff is seeking to strike the first part of the report - "Dr. Glass' analysis overstates any alleged economic losses in this case by overestimating the income that Mr. Sanchez could have reasonably been expected to earn from CPS even if Mr.

3

Sanchez's employment had not been terminated." In the event he does seek this testimony stricken, that request is denied. This testimony clearly falls within Dr. Steward's expertise, is helpful to the jury, and his methodology meets *Daubert's* requirements.

Regarding the second major opinion expressed by Dr. Steward - Mr. Sanchez's current earnings ability has been under-estimated, given Dr. Steward's expertise, he is entitled to express an opinion inasmuch as data of the type he reviews is routinely applied by economic experts in calculating damages in employment cases.[3]

The third major area of Dr. Steward's report is more problematic. Although Defendant asserts that neither "Dr. Steward's report nor his testimony renders any opinion as to Plaintiff's ability or capacity to physically return to work", Dr. Steward does opine: "the post-CPS jobs that Dr. Glass uses in his analysis, which are based on the vocational report of Mr. Brad Coffey, are overly restrictive." This opinion may or may not be challenging the vocational expert's opinion on what type of employment Plaintiff is capable of physically performing. *See Dunmiles v. Jubilee Towing, LLC*, No. CV 16-14325, 2017 WL 1212091, at *4 (E.D. La. Apr. 3, 2017) ("when calculating future lost wages, economists typically rely on other experts—such as vocational rehabilitation experts—to advise them as to the income a plaintiff can probably earn due to his injuries. Economists then use that information in conjunction with actuarial data to estimate the wage loss the plaintiff will probably sustain over the course of his lifetime."). To the extent that Dr. Steward is rendering an opinion as to what Plaintiff's physical limitations may be, the *Daubert* challenge is sustained. However, Dr. Steward's expertise does extend to opining what jobs may

---

[3] *See e.g*. § 13:72. Economic loss expert's analysis, 3 Pattern Disc. Empl. Discrim. § 13:72.

exist (and what those pay ranges may be) within the physical limitations set forth by the vocational expert and Plaintiff's physicians.

## Conclusion

Plaintiff's motions are denied in part and granted in part as set forth above.

SIGNED this 18th day of February, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE